**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

The Monfort Supply Co., et al.,

    Plaintiffs,

v.

Case No. 1:04cv145

Hamilton County Board of
Zoning Appeals, et al.,

Judge Michael H. Watson

    Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants' Motion for Judgment on the

Pleadings. (Doc. 24) Defendants' Motion is filed on behalf of the Hamilton County

Board of Zoning Appeals; Ronald A. Panioto, Jr. in his official capacity as Administrator

of the Hamilton County Board of Zoning Appeals; Dave Bates in his official capacity as

a member of the Hamilton County Board of Zoning Appeals; Doug H. Meyer, in his

official capacity as a member of the Hamilton County Board of Zoning Appeals; Peggy

A. Roudebush, in her official capacity as a member of the Hamilton County Board of

Zoning Appeals; Daniel G. Spraul, in his official capacity as a member of the Hamilton

County Board of Zoning Appeals; Bill Vitale, in his official capacity as a member of the

Hamilton County Board of Zoning Appeals; Jerome Bray, in his official capacity as a

Zoning Inspector; Ronald P. Miller in his official capacity with Hamilton County Rural

Zoning Commission and Board of Zoning Commission and Board of Zoning Appeals;

James D. Huhn, in his individual capacity and in his official capacity as a Hamilton

County Zoning Inspector; and C. Russell Sparks, in his individual capacity and in his

official capacity as an Administrator and Hamilton County Zoning Inspector ("The Hamilton County Defendants"). Plaintiffs have filed a Response in Opposition (Doc. 30), and Defendants filed a Reply. (Doc. 36) In addition, the Court heard oral argument on Defendants' Motion on April 21, 2005.

Also before the Court is a Motion for Judgment on the Pleadings (Doc. 54) filed by Defendants Anthony Upton, in his official capacity as Chairman of the Green Township Trustees; Charles Mitchell, in his official capacity as Green Township Trustee; Thomas J. Strauss, in his official capacity as a member of the Green Township Land Use Planning Committee; Michael T. Hinnenkamp, in his former official capacity as Township Planner for Green Township; Steve Grote, in his official capacity as Green Township Trustee; and Dale Profitt, in his official capacity as a former Green Township Trustee ("The Green Township Defendants"). The Green Township Defendants' Motion incorporates the Hamilton County Defendants' Motion and Reply.

## I.    **FACTUAL BACKGROUND**

Plaintiffs in this matter are the Monfort Supply Company, V&G Rack Company, and Vincent G. Rack, who is the President and CEO of both Monfort and V&G Rack. Plaintiff Monfort Supply is in the excavation business and owns many pieces of heavy equipment and vehicles to service that business. (Doc. 1, ¶ 2)[1] In 1986, Plaintiffs purchased approximately four acres of real property in Green Township, Hamilton County known as the "Doran property." (Id. ¶¶ 2, 8) Plaintiffs intended to use the

---

[1] In their Response to Defendants' Motion for Judgment on the Pleadings, Plaintiffs explain that they are involved in the real estate development and excavation business. Plaintiffs state that Monfort Supply Company is a holding company and V&G Rack is a subsidiary which does the excavation, sewer, water and labor part of the development. (Doc. 30, 3)

property for storing and servicing its heavy equipment and vehicles. (Id.) Plaintiffs explain that the property was used as commercial property before it was purchased, and Plaintiffs continued to use the property as commercial property. (Id. ¶ 2-4 [sic]) Plaintiffs explain further that Green Township officials have taken the position that the property was zoned residential since 1952; and no commercial use was made of it before then or thereafter; and even if there was such commercial use, it had been discontinued for a period of more than two years. (Id. ¶ 5) Plaintiffs allege that the County Defendants, in conspiracy with Green Township officials, have unlawfully and unreasonably denied Plaintiffs a non-conforming use certificate or hardship variance. (Id. ¶ 6) While this appears to be the main contention between the parties, Plaintiffs make various other allegations against the Defendants. Plaintiffs allege that Defendants have targeted them for numerous citations, which Plaintiffs claim were made in bad faith. (Id. ¶ 10) Plaintiffs claim that Defendants have made public derogatory and pejorative comments regarding the Plaintiffs' lawful attempts to use their property for light commercial purposes. (Id. ¶ 13) Plaintiffs state that the ongoing litigation and administrative proceedings against the County Defendants is evidence of an ongoing civil rights conspiracy and obstruction of justice by Defendants. (Id. ¶ 20)

The history of litigation over this property is as follows:

In 1989, Monfort Supply applied to the Hamilton County Zoning Inspector for a non-conforming use certificate to allow them to store and repair trucks and equipment on their property. (Doc. 25, Ex. A-1) The Inspector refused to issue the certificate, and the Board of Zoning Appeals affirmed the decision of the Inspector and denied the certificate. (Id.) Monfort Supply appealed the decision of the Hamilton County Board of

Zoning Appeals to the Hamilton County Court of Common Pleas pursuant to Ohio Revised Code Chapter 2506.[2] (Id.) The court found that the denial of the certificate was not "unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by a preponderance of substantial reliable and probative evidence."[3] *Monfort Supply v. Hamilton County Board of Zoning Appeals*, No. A8903963 (Hamilton County Ct. C.P., May 24, 1991). On appeal, the court of appeals affirmed the decision. (Id.) No further appeal was filed.

After the conclusion of this litigation, Monfort Supply sought a hardship variance from the Board of Zoning Appeals for the same use. The Board denied the variance, and Monfort Supply and Vincent Rack again appealed the denial to the Hamilton County Court of Common Pleas pursuant to Ohio Revised Code § 2506.01: *Monfort Supply Company v. Hamilton County Board of Zoning Appeals*, No. A9109107 (Hamilton County Ct. C.P. filed Oct. 18, 1991). (Doc. 25, Ex. A-2) While that appeal was pending, Monfort Supply and Rack filed a second action: *Monfort Supply Company*

---

[2]Ohio Rev. Code § 2506.01(A) provides that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located." The Court notes that this section was recently amended, but the changes do not effect the quoted material.

[3]If an appeal is taken under Ohio Rev. Code § 2506.01(A):

the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.

Ohio Rev. Code § 2506.04. The Court notes that this section was recently amended, but the changes do not effect the quoted material.

*v. Rural Zoning Commission*, No. A9111331 (Hamilton County Ct. C.P. filed De. 30,

1991). (Doc. 25, Ex. A-3) The two cases were consolidated. In the second case,

Monfort Supply and Rack made four claims (1) the Zoning Resolution denying the

hardship variance was unconstitutional as applied to their property; (2) the Board

selectively enforced the zoning regulations against Monfort in violation of 42 U.S.C. §

1983; (3) the actions of the Board constituted a taking in violation of 42 U.S.C. § 1983

and Ohio common law; (4) the Zoning Resolution was not adopted according to Ohio's

sunshine law, Ohio Rev. Code § 121.22, in violation of Monfort and Rack's right to

equal protection and due process. (Id.) These claims were dismissed on summary

judgment. (Id.) The court found that if the plaintiffs were to prevail on their appeal of

the denial of the hardship variance, then the claimed injuries would be resolved. (Id.)

Therefore, the court stated: "Until that appeal is decided, the issues raised in Plaintiff's

first three Claims are premature." The court of appeals affirmed the denial of the

hardship variance, finding that the Board's decision was supported by a preponderance

of reliable, probative, and substantial evidence. (Id.) No further appeals were filed.

In 1994, Monfort Supply and Vincent G. Rack filed another action seeking

declaratory judgment, an injunction, statutory relief and damages, based on the zoning

regulation designating the plaintiff's property as residential. *Monfort Supply Company*

*v. The Rural Zoning Commission*, No. A9406111 (Hamilton County Ct. C.P. filed Dec. 7,

1994). (Doc. 25, Ex. A-4) The plaintiffs raised the same constitutional claims based

on 42 U.S.C. § 1983. (Id.) This case was dismissed on the grounds that Monfort

Supply failed to exhaust its administrative remedies, or show that such relief is

unnecessarily onerous or futile. (Id.) This decision was affirmed by the court of appeals. (Id.) No further appeal was taken.

In 1996, Monfort Supply filed suit, appealing a Board of Zoning decision denying its proposed expansion of its facilities: *Monfort Supply Company v. Hamilton County Board of Zoning Appeals*, No. A9601245. (Hamilton County Ct. C.P. filed Mar. 4, 1996). (Doc. 25, Ex. A-5) Monfort sought to expand its already-existing nonconforming use certificate for its original property to the property for which it was previously denied a nonconforming use certificate. (Id.) The court found that under Ohio Revised Code § 2506.04, the Board's decision was not arbitrary and capricious; and Monfort had failed to establish that past decisions to expand other nonconforming uses constituted unequal, and therefore unconstitutional, treatment. (Id.) The court stated that the other cases involving expansions cited by Monfort were all substantially factually different. (Id.) The case was dismissed and not appealed. (Id.)

Again in 1996, Monfort filed suit, but dismissed its claims prior to trial: *Monfort Supply Company v. Green Township Board of Trustees*, No. A9606872 (Hamilton County Ct. C.P. filed Dec. 5, 1996). (Doc. 25, Ex. A-6)

In 1999, Monfort Supply filed another lawsuit: *Monfort Supply Company v. Hamilton County Board of Zoning Appeals*, No. A9900680 (Hamilton County Ct. C.P. filed February 8, 1999). (Doc. 25, Ex A-7) The Hamilton County Board of Zoning Appeals denied Monfort Supply's application for a nonconforming use certificate on the basis of *res judicata*. The court of common pleas reversed and remanded the matter back to the Hamilton County Board of Zoning Appeals for an evidentiary hearing. The Board held a hearing and denied Monfort Supply's application for a nonconforming use.

Monfort Supply appealed the Board's decision to the court of common pleas pursuant to Ohio Revised Code § 2506.01: *Monfort Supply Company v. Hamilton County Board of Zoning Appeals*, No. A9907334 (Hamilton County Ct. C.P. filed Dec. 12, 1999). (Doc. 25, Ex. A-8)  The court of common pleas affirmed, and Monfort Supply appealed this decision to the court of appeals.  (Id.)  The court of appeals upheld the Board's decision and rejected Monfort Supply's argument that the property had been used for commercial purposes in 1952 when its zoning classification changed to residential, and therefore this prior commercial use constituted a valid nonconforming use.  *Monfort Supply Company v. Hamilton County Board of Zoning Appeals*, No. A9907334 (Ct. App. July 17, 2002).  The court noted that the Board was presented with conflicting testimony and was unable to conclude that the property had a commercial use in 1952.  (Id.)  The court also rejected Monfort's argument that its due process rights were violated because Ohio Rev. Code § 303.19 permitted it to resume operating a commercial business on the property as long as it presented evidence that the commercial use had not been discontinued for a period of two years or more.  (Id.)  The court noted that the Board found that there was insufficient evidence that any commercial use existed continuously between 1952 and 1986, when Monfort purchased the property.  (Id.)  The court held that there was more than a preponderance of substantial, reliable, and probative evidence supporting the decisions of the Board and the court of common pleas.  (Id.)  Monfort Supply sought review in the Ohio Supreme Court, which was denied.  *Monfort Supply Co. v. Hamilton Cty. Bd. Of Zoning Appeals*, 780 N.E.2d 286 (Ohio Dec. 18, 2002) (table).

Plaintiffs have brought eleven claims for relief: (1) a claim under 42 U.S.C. § 1983 for a violation of Plaintiffs' property rights under the Fifth and Fourteenth Amendments of the federal and state constitutions, as well as a conspiracy to violate these rights;[4] (2) conspiracy to violate Plaintiffs' civil rights; (3) a declaration that "the Hamilton County Zoning Resolution . . . including, but not limited to, Article XV Non-conforming Uses, §§151-155, Article XVII, §§181 through 186 and Ohio Revised Code §2506.01 . . ." is unconstitutional on its face or as applied; (4) an unconstitutional taking without just compensation in violation of Plaintiffs' Fifth Amendment rights; (5) a taking of property violating due process rights secured by the Fifth and Fourteenth Amendments of the United States Constitution; (6) an "Arbitrary and Capricious Substantive Due Process Claim" related to the use of Plaintiff's property; (7) unconstitutional economic discrimination based on suspect class which "is subject to strict scrutiny review and is thereby violative of the Plaintiffs' rights to Due Process of Law and/or Equal Protection under the Law;" (8) "governmental defamation" in violation of the Due Process Clause; (9) violations of procedural due process; (10) tortious interference with contractual or business relationships; and (11) common law fraud and deceit.

---

[4]While Plaintiffs allege violations of their rights under the Ohio constitution in the Complaint, Plaintiffs do not discuss their state constitutional claims in their responses to Defendants' Motions. Nevertheless, the Supreme Court of Ohio stated that "where the provisions are similar and no persuasive reason for a differing interpretation is presented, this court has determined that protections afforded by Ohio's Constitution are coextensive with those provided by the United States Constitution." *State v. Robinette*, 685 N.E.2d 762, 766 (Ohio 1997).

## II.    **ARGUMENTS OF THE PARTIES**

Defendants' Motion is brought pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(c).  Defendants argue that Plaintiffs' claims are barred by (1) claim and

issue preclusion, and the doctrine of full faith and credit; (2) the *Rooker-Feldman*

doctrine; (3) the applicable statute of limitations; (4) Eleventh Amendment immunity; (5)

quasi-judicial immunity; (6) failure to state a claim upon which relief can be granted; and

(7) qualified immunity.  Defendants argue further that to the extent that Plaintiffs' state

law claims remain, this Court should decline to exercise supplemental jurisdiction over

those claims.

In addition, the Green Township Defendants argue that they had no authority to

regulate zoning for Plaintiffs' properties, and therefore they could not have deprived

Plaintiffs of any property rights through zoning ordinances.  The Green Township

Defendants have attached documents from the Hamilton County Court of Common

Pleas to their Motion.

Plaintiffs respond that (1) Defendants have relied upon materials outside the

pleadings, so Defendants' Motion should be converted to a motion for summary

judgment; (2) Plaintiffs should be allowed a reasonable period of discovery to respond

to Defendants' motion; (3) Plaintiffs' claim for declaratory judgment is not subject to the

general rule of claim preclusion; (4) Plaintiffs' previous claims based on civil rights

violations never proceeded to a trial on the merits; (5) Plaintiffs' takings claim could not

have been litigated at an earlier time because the taking had not yet occurred; (6)

Plaintiffs' claims cannot be barred by the statute of limitations because the violations

are continuing.

## III. ANALYSIS

### A. Conversion of Defendants' Motion to a Motion for Summary Judgment

In deciding a motion for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c), once "matters outside the pleadings are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and

disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c).[5] If referred to in a complaint

and central to the claim, documents attached to a motion to dismiss form part of the

pleadings. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999). Courts may

also consider public records, matters of which a court may take judicial notice, and

letter decisions of governmental agencies. *Id.* If extrinsic materials merely "fill in the

contours and details" of a complaint, they add nothing new and may be considered

without converting the motion to one for summary judgment. *Yeary v. Goodwill*

*Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

The documents Defendants have presented are public records. Therefore, this

Court finds that conversion of Defendants' Motions is not warranted under Federal Rule

of Civil Procedure 12(c).

### B. Standard of Reveiw

The Sixth Circuit has distinguished between facial and factual attacks among

motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

---

[5]The same is not true for a motion pursuant to Federal Rule of Civil Procedure 12(b)(1): "When considering a motion to dismiss for lack of subject matter jurisdiction, this Court may look beyond jurisdictional allegations in the complaint and the Court may consider whatever evidence the parties submit." *BP Care, Inc. v. Thompson*, 337 F.Supp.2d 1021, 1025 (S.D.Ohio 2003), *quoting*, *Fairport Int'l. Exploration, Inc. v. Shipwrecked Vessel Known as THE CAPTAIN LAWRENCE*, 105 F.3d 1078, 1081 (6th Cir.1997), *vacated on other grounds*, 523 U.S. 1091 (1998).

*Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 592 (S.D.Ohio 2002). A facial

attack on the subject matter jurisdiction alleged by the complaint merely questions the

sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir.

1990). In reviewing such a facial attack, a trial court takes the allegations in the

complaint as true, which is a similar safeguard employed under 12(b)(6) motions to

dismiss. *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of

the pleading's allegations, but a challenge to the factual existence of subject matter

jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The County

Defendants have not questioned the factual basis for jurisdiction, and therefore, this

Court will treat Defendants' Motion as a facial attack on the subject matter jurisdiction.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure

12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard

as a motion to dismiss. *Thomas v. Gee*, 850 F.Supp. 665, 668 (S.D. Ohio 1994), *citing*,

*Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979). In ruling upon

such motion, the Court must accept as true all well-pleaded material allegations of the

pleadings of the opposing party, and the motion may be granted only if the moving party

is nevertheless clearly entitled to judgment. *Id.*, *citing*, *Southern Ohio Bank v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).

Finally, a motion to dismiss under Rule 12(b)(6) requires this Court to construe

the complaint in the light most favorable to the plaintiff, accept all of the complaint's

factual allegations as true, and determine whether the plaintiff undoubtedly can prove

no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for*

*Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867

(1990). "However, while liberal, this standard of review does require more than the

bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d

1101, 1109 (6th Cir.1995); *see also Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th

Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations

of unconstitutional conduct by persons acting under color of state law. Some factual

basis for such claims must be set forth in the pleadings.")

### C.  *Rooker-Feldman* Doctrine

*Rooker-Feldman* is a doctrine with only limited application. *Coles v. Granville*,

448 F.3d 853, 857 (6th Cir. 2006). The doctrine gets its name from two Supreme Court

cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court

of Appeals v. Feldman*, 460 U.S. 462 (1983). As the Supreme Court has explained:

"*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme] Court's

appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United

States district court from exercising subject-matter jurisdiction in an action it would

otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, §

1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity)."

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005). In both

*Rooker* and *Feldman*, "the losing party in state court filed suit in federal court after the

state proceedings ended, complaining of an injury caused by the state-court judgment

and seeking review and rejection of that judgment." *Id.*

The Sixth Circuit has explained that the key inquiry in determining whether a

claim falls within the scope of the *Rooker-Feldman* doctrine is the source of the injury

which the plaintiff alleges in his or her federal complaint:

> If the source of the injury is the state court decision, then the
> *Rooker-Feldman* doctrine would prevent the district court from asserting
> jurisdiction. If there is some other source of injury, such as a third party's
> actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). However, there are

exceptions to this rule of thumb. For example, if a third party's actions are the product

of a state court judgment, then a plaintiff's challenge to those actions are in fact a

challenge to the judgment itself. *Id.*, *citing Hoblock v. Albany County Bd. of Elections*,

422 F.3d 77, 88 (2d Cir. 2005) (finding that the plaintiffs' challenge to a county board of

election's refusal to tally certain absentee ballots was in fact a challenge to the state

court judgment that the ballots were invalid). As the Sixth Circuit has explained: "The

key point is that the source of the injury must be from the state court judgment itself; a

claim alleging another source of injury is an independent claim." *Id.*

It is clear that Plaintiff's claims for conspiracy to violate section 1983 (Second

Claim); governmental defamation (Eighth Claim); tortious interference with contractual

or business relationships (Tenth Claim); and common law fraud and deceit (Eleventh

Claim) are independent claims because Plaintiff has alleged that the source of the

injury is a third party's actions, and not the product of a state court judgment.

It is also clear that Plaintiff's request for a declaration that "the Hamilton County

Zoning Resolution . . . including, but not limited to, Article XV Non-conforming Uses,

§§151-155, Article XVII, §§181 through 186 and Ohio Revised Code §2506.01 . . ." are

unconstitutional on their face (Third Claim) does not fall within the *Rooker-Feldman*

doctrine. *See Feldman*, 460 U.S. 482-83 (explaining that to the extent that plaintiff

challenges the constitutionality of bar admission rule, the district court did have subject

matter jurisdiction); *see also Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (explaining that *Rooker-Feldman* "does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action,' rather than a challenge to the law's application in a particular case.") (citations omitted).

Conversely, Plaintiffs' request for a declaration that the Hamilton County Zoning Resolution and Ohio Revised Code § 2506.01 are unconstitutional *as applied* (Third Claim) is barred by *Rooker-Feldman*. Each of Plaintiff's state court actions were brought pursuant to Ohio Revised Code § 2506.01(A), which provides that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located." If such an appeal is taken, under Ohio Revised Code § 2506.04, "the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." Based on this language, as well as the *Feldman* and *Hood v. Keller* decisions, the Court finds that Plaintiffs are necessarily attacking the state court judgment, which brings Plaintiff's claim that the Resolution and Ohio Revised Code §2506.01 are unconstitutional as applied within the scope of the *Rooker-Feldman* doctrine.

Less clear is whether the *Rooker-Feldman* doctrine applies to Plaintiff's takings claims (First, Fourth, Fifth Claims); substantive due process claim (Sixth Claim); claim for economic discrimination (Seventh Claim); and procedural due process claim (Ninth

Claim). However, the Court finds that these claims are not barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine "is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap." *McCormick*, 451 F.3d at 395. The Court recognizes that Plaintiff raised constitutional claims in the state court proceedings. However, the source of Plaintiffs' alleged harm precedes the state court judgments. *Accord Kammeraad v. Michigan Dept. Envr. Quality*, 2006 WL 2598403, *3 (W.D. Mich. Sept. 8, 2006) (slip op.) (where plaintiff alleges agency violated constitutional rights by denying application, plaintiff does not complain of injury rendered by state court decision upholding agency decision); *Glenn v. Clement Township*, 2006 WL 20922409, *10 (E.D. Mich. July 27, 2006) (slip op.) (where township's zoning board denied plaintiffs' application for special use permit, source of harm is not state court decision affirming denial, but is township's action); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 517 (6th Cir. 2004)[6] (*Rooker-Feldman* doctrine not applicable where "the injury alleged was the permit denial that predated the state-court proceedings, not the state-court decision itself, and the relief that the plaintiff requested was monetary."). While "these independent claims may deny a legal conclusion of the state court . . . this fact does not lead to a divestment of subject matter jurisdiction in the federal courts." *McCormick*, 451 F.3d at 392.

---

[6]The Court recognizes that the *DLX* court uses the "inextricably intertwined" language which has been implicitly repudiated by the Supreme Court in *Exxon. See McCormick*, 451 F.3d at 394. However, the Supreme Court's criticism was directed towards extending *Rooker-Feldman* to situations where the source of the injury was not the state court judgment. In contrast, the *DLX* court found that *Rooker-Feldman* was not applicable, and based this conclusion on a entirely different rationale: the injury predated the state court proceedings. Therefore, the Court feels compelled to follow the Sixth Circuit's direction in this decision.

Based on the foregoing, only Plaintiffs' request for a declaration that the Resolution and Ohio Revised Code § 2506.01 are unconstitutional as applied (Third Claim) is barred by *Rooker-Feldman*.[7] Accordingly, this claim shall be dismissed.

## D. Ripeness

Defendants did not raise the issue of ripeness in their Motions. However, this Court has an independent duty "to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 508 (6th Cir. 2006), *quoting Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Arnett v. Meyers*, 281 F.3d 552, 562 (6th Cir. 2002), *citing Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987).

In *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court set forth a two prong test for determining whether a Fifth Amendment takings claim is ripe for adjudication. First, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at

---

[7]The Court finds that even if this claim is not barred by *Rooker-Feldman*, the claim is not ripe under *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), discussed *infra* The Court notes that dismissal without prejudice would be appropriate in this instance.

186. Second, a takings claim is not ripe until the property owner seeks "compensation through the procedures the State has provided for doing so." *Id.* at 194.

Similarly, claims for violations of substantive due process, procedural due process, and equal protection which are ancillary to a takings claim are also subject to this ripeness requirement. *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005), *citing Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005); *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). Factors to consider in determining whether the due process and equal protection claims are truly independent claims, or are ancillary to the takings claim are whether the claims stem from an immediate and concrete injury, arise from the same nucleus of facts as the takings claim, or are an attempt to circumvent the ripeness requirement. *JGA Development, LLC v. Charter Tp. of Fenton,* 2006 WL 618881, *6 (E.D.Mich. March 9, 2006) (slip op.), *citing Nasierowski Brothers Investment Company v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991); *Ardire v. Rump*, No. 92-4204, 1993 U.S.App. LEXIS 17220, *14 (6th Cir. 1993); *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 160 (6th Cir. 1992); *see also Lytle v. Potter*, 2006 WL 2882860, *3 (N.D.Ohio Oct. 6, 2006) (slip op.) (explaining that plaintiff can only avoid ripeness requirement by alleging some independent harm flowing directly from denial of due process); *J-II Enterprises, LLC v. Board of Com'rs of Warren County, Ohio*, 2005 WL 1285640 *2 (6th Cir. May 18, 2005) (unpublished) (same).

The Court finds that Plaintiffs' due process and equal protection claims are ancillary to their takings claim, as they arise out of the same nucleus of facts as the taking claim. Plaintiffs have not alleged an independent harm which flows directly from the denial of due process. Instead, Plaintiffs' alleged harm stems from the denial of the

non-conforming use certificate, hardship variance, and the expansion of its previous
non-conforming use certificate. Therefore, the finality requirement applies to Plaintiffs'
violation of property rights (First Claim); just compensation takings claim under the Fifth
Amendment (Fourth Claim) and due process takings claim (Fifth Claim); substantive
due process claim (Sixth Claim); due process/equal protection claim (Seventh Claim);
and procedural due process claim (Ninth Claim).

However, "facial" challenges to regulations are generally ripe the moment the
challenged regulation or ordinance is passed. *Suitum v. Tahoe Regional Planning
Agency*, 520 U.S. 725, 736, at n.10 & 11 (1997); *San Remo Hotel, L.P. v. San
Francisco*, 545 U.S. 323, 345 (2005) (explaining that petitioners were never required to
ripen their claim that ordinance was facially invalid). Therefore, the *Williamson County*
ripeness requirement does not apply to Plaintiffs' request for a declaration that the
Resolution and Ohio Revised Code § 2506.01 are unconstitutional on its face (Third
Claim).

*Williamson County* prong-one ripeness is a factual determination. *DLX*, 381 F.3d
at 525. This Court must take into account all relevant statutes, ordinances, and
regulations; in determining whether the decisionmaker has arrived at a final
determination with respect to Plaintiffs' use of their property; and that the determination
is one which will allow a court to determine whether a regulatory taking has taken place.
*Id.* Here, Plaintiffs have not only applied for a non-conforming use certificate and an
expansion of its previous non-conforming use certificate, but Plaintiffs have also applied
for a hardship variance. Moreover, while the exhaustion of state administrative
remedies does not apply in suits brought under § 1983, *see Patsy v. Bd. of Regents*,

457 U.S. 496 (1982), Plaintiffs have appealed the denial of their applications.
Therefore, the Court concludes that Plaintiffs have satisfied prong-one ripeness.

However, the Court finds that Plaintiffs have not satisfied prong-two ripeness
under *Williamson County*.  Prong-two ripeness applies only if a "reasonable, certain and
adequate provision for obtaining compensation," exists in that state.  473 U.S. at
192-94.  The Sixth Circuit has recently held that Ohio has "reasonable, certain, and
adequate procedures" for plaintiffs to pursue compensation for an involuntary taking.
*Coles*, 448 F.3d at 865.  There is no evidence in the record that Plaintiffs have pursued
such procedures.  Therefore, Plaintiffs claims are not ripe, and must be dismissed
without prejudice.  *Peters*, 427 F.3d at 1038, *citing Alltel Tennessee, Inc. v. Tennessee
Public Service Comm'n*, 913 F.2d 305, 307 (6th Cir. 1990) (explaining that an unripe
takings claim should be dismissed without prejudice, thereby allowing the plaintiff to
reassert the claim, should it become ripe in future).

E.    **Statute of Limitations**

Defendants argue that Plaintiffs' section 1983 claims are barred by the statute of
limitations.  Plaintiff's remaining section 1983 claims are for conspiracy to violate
section 1983 (Second Claim); a request for a declaration that the Resolution and Ohio
Revised Code § 2506.01 are unconstitutional on its face (Third Claim); and
governmental defamation (Eighth Claim).

The appropriate statute of limitations to be applied in all section 1983 actions is
the state statute of limitations governing actions for personal injury.  *Wilson v. Garcia*,
471 U.S. 261, 276-280 (1985).  The statute of limitations for a section 1983 action
arising in Ohio is contained in Ohio Rev.Code § 2305.10, which requires that actions for

bodily injury be filed within two years after their accrual. *Banks v. City of Whitehall*, 344

F.3d 550, 553 (6th Cir. 2003), *citing, Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir.

1989).

Federal law governs the question of when the limitations period begins to run.

*Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to

run when the plaintiff knows or has reason to know of the injury which is the basis of his

action. *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988), *citing,*

*Sevier*, 742 F.2d at 273. "A plaintiff has reason to know of his injury when he should

have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at

273.

The instant action was filed on February 19, 2004. Defendants' most recent

denial of an application by Plaintiffs was more than two years before that date, on

November 18, 1999. (Doc. 25, Ex. 8) However, Plaintiffs argue that their conspiracy

claim is not barred because the violations have been ongoing. This type of "continuing

conspiracy" theory was discussed by the Sixth Circuit in *LRL Properties v. Portage*

*Metro Housing Authority*, 55 F.3d 1097, 1106 (6th Cir. 1995). The court noted that in

the case before it, the plaintiffs did not allege any acts in furtherance of the conspiracy

or any injury or damage to the plaintiffs from the alleged conspiracy past May 15, 1990.

*Id.* The court stated: "This Court has rejected the position that the continuance of a

conspiracy beyond the date when injury or damage occurs extends the statute of

limitations in a section 1983 action." *Id., citing, McCune v. City of Grand Rapids*, 842

F.2d 903, 906 (6th Cir. 1988). Therefore, the court held that "even if the 'conspiracy'

did continue past the May 15, 1990 date, a fact not alleged in the complaint, the statute

of limitations would not be extended beyond May 15, 1990, the date of the last overt act of the alleged conspirators." *Id.* at 1106-107.

Similarly, the Court finds that Plaintiffs' conspiracy claim is barred by the statute of limitations. While Plaintiffs do not allege any dates in their complaint related to the conspiracy and their property rights, the last possible overt act by Defendants or the date of any injury or damage to Plaintiffs from the alleged conspiracy would be the final denial of their application on November 18, 1999. Plaintiffs also allege that Defendants have conspired to selectively target Plaintiffs for numerous citations, but the timeline of citations which is attached to the Complaint shows that the date of the last citation was July 18, 2001. (Doc. 1, Ex. 1) Therefore, Plaintiffs have not alleged any overt acts or injury which would bring their claim within the statute of limitations.

The Court also finds that Plaintiffs' request for a declaration that the Hamilton County Zoning Resolution and Ohio Revised Code § 2506.01 are unconstitutional on its face (Third Claim) is barred by the statute of limitations. The Sixth Circuit has noted: "In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed." *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 521 (6th Cir. 1997), *quoting Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993). The Hamilton County Zoning Resolution was adopted on August 10, 1949, and became effective in Green Township on November 17, 1952. (Doc. 1, Ex. 4) The legislative history of Ohio Revised Code § 2506.01 shows that this section was first made effective on September 16, 1957. However, Plaintiffs did not purchase the Doran property until

1986. Therefore, the harm allegedly caused by the Hamilton County Zoning Resolution and Ohio Revised Code § 2506.01 being unconstitutional was measurable and compensable for long as Plaintiffs have owned the property.

In support of their governmental defamation claim, Plaintiffs cite to the numerous newspaper articles attached to their Complaint. (Doc. 1, Ex. 3)  However, the most recent article in this collection is dated September 25, 1999.  Assuming this was the date of the last defamatory statement, Plaintiffs' claim would be barred by the statute of limitations.

Therefore, both of Plaintiffs remaining section 1983 claims must be dismissed.

### F.    State law claims

Plaintiffs' remaining claims are state law claims for tortious interference with contractual or business relationships and common law fraud and deceit.  When a federal district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over pendant state claims.  28 U.S.C. § 1367(c)(3).  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . ." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).  The Court hereby declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against these Defendants.

## IV.    CONCLUSION

Based on the foregoing, it is hereby ORDERED that Defendants' Motions for

Judgment on the Pleadings (Docs. 24, 54) are hereby GRANTED:

1.    Plaintiffs' Third Claim, in so far as it requests a declaration that the
      Resolution and Ohio Revised Code § 2506.01 are unconstitutional as
      applied is DISMISSED with PREJUDICE;

2.    Plaintiffs' claim for violation of property rights (First Claim); just
      compensation takings claim under the Fifth Amendment (Fourth Claim)
      and due process takings claim (Fifth Claim); substantive due process
      claim (Sixth Claim); due process/equal protection claim (Seventh Claim);
      and procedural due process claim (Ninth Claim) are DISMISSED without
      PREJUDICE.

3.    Plaintiffs' claims are for conspiracy to violate section 1983 (Second
      Claim); a request for a declaration that the Resolution and Ohio Revised
      Code § 2506.01 are unconstitutional on its face (Third Claim); and
      governmental defamation (Eighth Claim) are DISMISSED with
      PREJUDICE; and

4.    Plaintiffs' state law claims for tortious interference with contractual or
      business relationships (Tenth Claim) and common law fraud and deceit
      (Eleventh Claim) are DISMISSED without PREJUDICE.

**IT IS SO ORDERED.**

Michael H. Watson, Judge
United States District Court